# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TMI SOLUTIONS LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 17-965-LPS-CJB |
| BATH & BODY WORKS DIRECT, INC., | : | |
| Defendant. | : | |
| TMI SOLUTIONS LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 17-966-LPS-CJB |
| THE GAP INC., | : | |
| Defendant. | : | |
| TMI SOLUTIONS LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 17-967-LPS-CJB |
| NORDSTROM, INC., | : | |
| Defendant. | : | |
| TMI SOLUTIONS LLC, | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 17-968-LPS-CJB |
| STAPLES INC., | : | |
| Defendant. | : | |

| | |
|---|---|
| TMI SOLUTIONS LLC, | : |
|       Plaintiff, | : |
| v. | :   C.A. No. 17-969-LPS-CJB |
| VICTORIA'S SECRET STORES, INC. and L BRANDS, INC., | : |
|       Defendants. | : |

Timothy Devlin, DEVLIN LAW FIRM LLC, Wilmington, DE
Timothy E. Grochocinski, Joseph P. Oldaker, NELSON BUMGARDNER PC, Orland Park, IL

    Attorneys for Plaintiff TMI Solutions LLC


Beth Moskow-Schnoll, Evan W. Krick, BALLARD SPAHR LLP, Wilmington, DE
Lynn E. Rzonca, BALLARD SPAHR LLP, Philadelphia, PA
Richard W. Miller, Chittam U. Thakore, BALLARD SPAHR LLP, Atlanta, GA

    Attorneys for Defendants Bath & Body Works Direct, Inc., The Gap, Inc., and Victoria's Secret Stores, Inc. and L Brands, Inc.


Frederick L. Cottrell, III, Katharine L. Mowery, RICHARDS, LAYTON & FINGER, P.A. Wilmington, DE
Douglas F. Stewart, BRACEWELL LLP, Seattle, WA
David J. Ball, BRACEWELL LLP, New York, NY

    Attorneys for Defendant Nordstrom, Inc.


Denise S. Kraft, Brian A. Briggs, DLA PIPER LLP (US), Wilmington, DE
Nicholas G. Papastavros, Yasmin Ghassab, DLA PIPER LLP (US), Boston, MA

    Attorneys for Defendant Staples, Inc.

---

## **MEMORANDUM OPINION**


September 28, 2018
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court in these five related patent infringement cases are Defendants Bath & Body Works Direct, Inc., The Gap, Inc., Nordstrom, Inc., Staples, Inc., Victoria's Secret Stores, Inc., and L Brands, Inc.'s (collectively, "Defendants") motions to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See, e.g.*, C. A. No. 17-965-LPS-CJB D.I. 15)[1] Defendants raise two grounds in their motions to dismiss: (i) the asserted patents are directed to patent ineligible subject matter pursuant to 35 U.S.C. § 101; and (ii) the complaint fails to state a plausible claim for direct infringement under the *Twombly/Iqbal* pleading standard. The parties completed briefing (D.I. 16, 20, 21, 23) and, thereafter, filed multiple notices identifying recent opinions of the U.S. Court of Appeals for the Federal Circuit related to § 101 (D.I. 24, 25, 26, 28). Even though the parties have not provided their specific analyses of all of these opinions, the Court has considered each of them in reaching its decision here. For the reasons that follow, the Court will deny Defendants' motions.

I.     **BACKGROUND**

Plaintiff TMI Solutions LLC ("Plaintiff" or "TMI") sued Defendants for infringement of United States Patent Nos. 9,484,077 ("'077 patent") and 9,484,078 ("'078 patent").[2] Both the '077 and '078 patents are entitled "Providing Services from a Remote Computer System to a

---

[1] Unless otherwise noted, all references to the docket index ("D.I.") are to C.A. No. 17-965-LPS-CJB. All parties agree that the motions and accompanying briefing in all five actions are substantially the same. (*See, e.g.*, D.I. 16 at 2 n.1; D.I. 20 at 1 & n.1; C. A. No. 17-966-LPS-CJB D.I. 16 at 2 n.1; C. A. 17-968-LPS-CJB D.I. 16 at 1 n.2)

[2] Plaintiff filed an amended complaint fixing certain clerical errors in its original complaint. (*See, e.g.*, C.A. No. 17-968-LPS-CJB D.I. 11; C.A. No. No. 17-966-LPS-CJB D.I. 17; C.A. No. 17-967-LPS-CJB D.I. 17; C.A. No. 17-969-LPS-CJB D.I. 18)

1

User Station Over a Communication Network." Both are continuations of U.S. Patent App. No. 12/603,209 and trace their lineage back to U.S. Patent App. No. 08/251,724, filed on May 31, 1994, which is now U.S. Patent No. 5,694,546. The patents relate to methods for "providing services from a remote computer system to a user station over a communications network and, more particularly, to automated identification of users." '077 patent, 1:30-33.

Plaintiff alleges that Defendants infringe at least claim 6 of the '077 patent and at least claims 1 and 2 of the '078 patent "by, among other things, practicing and/or using hardware that practices the computer implemented method[s] set forth in [the aforementioned claims] via Defendant[s'] use of cookies in conjunction with its website." (D.I. 1 at 11, 19) A "cookie" is a "small packet of information . . . that is stored in the user's computer either temporarily for that session or permanently on the hard disk." (D.I. 16 at 3 & n.2 (internal quotation marks and citation omitted); *see also* D.I. 1 Ex. 2 at 4 ("A cookie is a small data file that's stored by your Web browser on your computer or device. . . . [and is] used to do things like see how you navigate [a] website, and remember you and your online purchases when you return."))

Claim 6 of the '077 patent recites:

A computer implemented method, comprising:

> receiving first user identification information at a remote computer system over a communications network from a user station during a first user-initiated communication session for a user not previously identified to the remote computer system;
>
> sending second information that is a function of the first user identification information and that is different from the first user identification information from the remote computer system to the user station over the communications network during the first user-initiated communication session to be stored automatically at the user station;

storing third information that is based on the first user identification information at a location remote from the user station and accessible to the remote computer system;

receiving at the remote computer system the second information over the communications network during a subsequent and separate user-initiated communication session automatically from the user station;

retrieving the stored third information at the remote computer system using the received second information, during the subsequent and separate communication session;

using the retrieved third information for interaction with the remote computer system during the subsequent and separate communication session; and

receiving second user identification information at the remote computer system, sending fourth information that is a function of and different from the second user identification information to the user station and storing fifth information based on the second user identification information at the location remote from the user station.

Claim 1 of the '078 patent recites:

A computer implemented method, comprising:

receiving by a remote computer system over a communications network, first information identifying a user station not previously identified to the remote computer system during a first user initiated communication session;

sending from the remote computer system to the user station second information that is a function of an different from the first information during the first user initiated communication session;

storing third information based on the first information at a location remote from the user station and accessible to the remote computer system;

receiving the second information at the remote computer system during a second user initiated communication session from the user station automatically, wherein the user station triggers automatically sending the second information to the remote computer system, wherein the second information was automatically stored at the user station;

retrieving the previously stored third information at the remote computer system; and

matching at least a portion of the received second information with the stored third information;

wherein the second information is used by the remote computer system as a station identifier, and wherein the station identifier is used by the remote computer system as a surrogate for a user identifier.

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### B. Patentable Subject Matter

Under 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." There are

three exceptions to § 101's broad patent-eligibility principles: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). "Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), the Supreme Court set out a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). First, courts must determine if the claims at issue are directed to a patent-ineligible concept ("step one"). *See id.* If so, the next step is to look for an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("step two"). *Id.* (alteration in original). The two steps are "plainly related" and "involve overlapping scrutiny of the content of the claims." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).

At step one, "the claims are considered in their entirety to ascertain whether their character **as a whole** is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (stating first step "calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter").

In conducting the step one analysis, courts should not "oversimplif[y]" key inventive

concepts or "downplay" an invention's benefits. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337-38 (Fed. Cir. 2016); *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) ("[C]ourts 'must be careful to avoid oversimplifying the claims' by looking at them generally and failing to account for the specific requirements of the claims.") (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016)).

At step two, courts must "look to both the claim as a whole and the individual claim elements to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *McRO*, 837 F.3d at 1312 (internal brackets and quotation marks omitted). The "standard" step two inquiry includes consideration of whether claim elements "simply recite 'well-understood, routine, conventional activit[ies].'" *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2359). "Simply appending conventional steps, specified at a high level of generality, [is] not *enough* to supply an inventive concept." *Alice*, 134 S. Ct. at 2357 (internal quotation marks omitted; emphasis in original).

However, "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom*, 827 F.3d at 1350. In *Bascom*, the Federal Circuit held that "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself," but nonetheless determined that an ***ordered combination*** of these limitations was patent-eligible under step two. *Id.* at 1349.

The Federal Circuit recently elaborated on the step two standard, stating that "[t]he

question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) ("We have held that 'whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact.'") (quoting *Berkheimer*, 881 F.3d at 1368).

"Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional." *Berkheimer*, 881 F.3d at 1369; *see also Exergen Corp. v. Kaz USA, Inc.*, 725 F. App'x 959, 965 (Fed. Cir. 2018) ("Something is not well-understood, routine, and conventional merely because it is disclosed in a prior art reference. There are many obscure references that nonetheless qualify as prior art.").

As part of the step two "inventive concept" inquiry, the Federal Circuit has looked to the claims as well as the specification. *See Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("*Affinity Labs I*") ("[N]either the claim nor the specification reveals any concrete way of employing a customized user interface."). Still, it is not enough just

to disclose the improvement in the specification; instead, the Court's task becomes to "analyze the asserted claims and determine whether they ***capture these improvements***." *Berkheimer*, 881 F.3d at 1369 (emphasis added). In other words, "[t]o save a patent at step two, an inventive concept must be ***evident in the claims***." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) (emphasis added); *see also Alice*, 134 S. Ct. at 2357 ("[W]e must examine the ***elements of the claim*** to determine whether it contains an 'inventive concept.'") (emphasis added); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) ("The § 101 inquiry must focus on the language of the Asserted Claims themselves.").

At both steps one and two, it is often useful for the Court to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016).

Finally, as a procedural matter, the Federal Circuit has observed frequently that § 101 disputes may be amenable to resolution on motions for judgment on the pleadings, motions to dismiss, or summary judgment. *See, e.g., Berkheimer*, 881 F.3d at 1368 ("Whether a claim recites patent eligible subject matter is a question of law which may contain disputes over underlying facts. Patent eligibility has in many cases been ***resolved on motions to dismiss or summary judgment. Nothing in this decision should be viewed as casting doubt on the propriety of those cases.*** When there is no genuine issue of material fact regarding, whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law.") (emphasis added); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (affirming grant of Rule 12(c) motion for judgment on pleadings for lack of patentable subject matter);

9

*Intellectual Ventures I LLC v. Symantec Corp.*, 725 F. App'x 976, 978 n.1 (Fed. Cir. 2018) (affirming grant of summary judgment of patent ineligibility and stating *Berkheimer* "does not compel a different conclusion").

## IV. DISCUSSION

### A. Section 101[3]

For the purposes of this motion, the Court will treat claim 6 of the '077 patent and claim 1 of the '078 patent as representative claims. "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer*, 881 F.3d at 1365. Plaintiff has not presented any meaningful argument to differentiate the representative claims from other claims. Plaintiff also does not dispute Defendants' assertion that claim 6 of the '077 patent and claim 1 of the '078 patent are representative claims. (*See* D.I. 16 at 3-4 and 3 n. 3; D.I. 21 at 1 n.1)

The Court now turns to the *Alice/Mayo* two-step analysis of the representative claims.

#### 1. Step One

At step one, the Court agrees with Defendants that the claims of the asserted patents "are directed to nothing more than the abstract idea of exchanging information for the purpose of identification." (D.I. 16 at 2)

Defendants argue "[n]otwithstanding the technical jargon included in the claims, the key to TMI patents' claims is the idea of exchanging information, starting with the first contact by a

---

[3]The parties dispute whether claim construction is necessary to resolve § 101 issues. (*See, e.g.*, D.I. 20 at 5-6; D.I. 21 at 2) Because the Court will be denying Defendants' motion due to factual disputes, it is unnecessary to address claim construction.

10

customer, to identify the customer and facilitate subsequent interactions with the customer." (D.I. 16 at 10) Plaintiff responds that "Defendants' proposed abstraction ignores the plain language of the claims, and the specification, which demonstrates that the claims are directed to a solution to the unique problem of how to automatically identify users, and user stations, in the context of computer networks, including the Internet." (D.I. 20 at 7-8)

The representative claims are not meaningfully different from claims reciting similar steps of manipulating information that have been found to be abstract in other cases. *See EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 971 (Fed. Cir. 2017) ("[C]laim 1 is directed to an abstract idea [because it] merely recites the familiar concepts of receiving, authenticating, and publishing data."); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claim requiring "converting," "routing," "controlling," "monitoring" and "accumulating records" relates to "manipulat[ing] data but fail[s] to do so in a non-abstract way"); *RecogniCorp*, 855 F.3d at 1326 (claim "directed to the abstract idea of encoding and decoding image data"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) ("[A]t their core, [the claims are] directed to the abstract idea of collecting, displaying, and manipulating data."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1365, 1367 (Fed. Cir. 2015) (patent claiming "methods of tracking and storing information relating to a user's purchases and expenses and presenting that information to the user" were directed to abstract idea); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 990 (Fed. Cir. 2014) (patent claiming "methods and a system for capturing and storing data" were directed to abstract idea); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (holding that "asserted patents are

drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory.").

On this same reasoning, the claims here are directed to an abstract idea. The claims generally recite a method of receiving, sending, storing, and retrieving information pertaining to identification of remote computer users in a communication network. Nothing in the claim language refers to how the receiving, sending, storing, and retrieval of information occurs beyond generic methods of doing so. Simply "reciting . . . data manipulation steps" without additional limitations constitutes, at step one, an abstract idea. *Capital One*, 850 F.3d 1332, 1340.

Plaintiff contends that the claims are instead directed to the unique problem of how to "automatically" identify users over a communication network by "automatically storing" and "automatically receiving" user identification information, which supposedly constitutes a "technological solution to a technological problem." (D.I. 20 at 1-2, 7-8) But other than this blanket statement, Plaintiff has not sufficiently articulated what is the "technological problem" that existed at the time of the filing of the patents and what is the "technological solution" the patents disclose to solve that problem.

Nothing in the claims, understood in light of the specification, requires anything other than conventional computer technology for receiving, sending, storing, and retrieval of information.[4] As the specification explains, the disclosed invention is compatible with "an extensive variety of computers, operating systems and communications devices." '078 patent at 4:51-52. There is no indication that the "computers, operating systems and communications

---

[4] In this case, there is an overlap between the two steps in both the parties' arguments and the Court's analysis. *See Elec. Power Grp.*, 830 F.3d at 1353 (noting that steps one and two are "plainly related" and may "involve overlapping scrutiny of the content of the claims.")

12

devices" are anything but readily available. Generic devices do not make a claim non-abstract (as that concept is applied at step one). *See Alice*, 134 S. Ct. at 2347 (holding that "purely functional and generic" devices do not save abstract claim); *Capital One*, 850 F.3d 1332 (finding apparatus claim abstract as it contained only generic components, e.g., "processor," "component that organizes data," and "component that organizes"); *Affinity Labs I*, 838 F.3d 1266 (finding system claim abstract that contained "storage medium" and "wireless cellular telephone device").

Accordingly, the Court will now turn to step two of the analysis.

### 2. Step Two

At step two, the Court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355; *see also Mayo*, 566 U.S. at 73 (explaining that steps of claim must amount to more than "well-understood, routine, conventional activity"). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact . . . [and] must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368.

Defendants argue that "[u]sing cookies for identification . . . is merely the computerized version of the ***long-standing practice*** . . . of assigning customers identification numbers that entities (such as stores or banks) can use to identify the customer's account information when they return." (D.I. 16 at 1 (emphasis added); *see also id.* at 11 (comparing TMI's patents with routine practice of creating account and identifying returning customers in brick and mortar stores); D.I. 21 at 6, 7 (noting "longstanding commercial practice" of "storing account information to identify actual or potential customers in the event of a return visit" and that

13

"automating" such practice lacks inventive concept))

Plaintiff counters that "Defendants have failed to meet their burden of establishing that the asserted claims, when considered in their entirety, are even directed to a conventional business practice" that was practiced at the time of the patents.[5] (D.I. 20 at 8-9) On this point, the Court agrees with Plaintiff.

"Whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369. The materials the Court may consider at this stage reveal a factual dispute as to whether the claim limitations – automatically identifying a user by automatically storing information in the user's computer (e.g., a cookie) when a user visits a website a first time and automatically retrieving that information when the user revisits the website and using that information to identify the user – was a conventional business practice at the time of the patents (May of 1994). Defendants have not sufficiently persuaded the Court that the claim limitations were well-understood, routine, and conventional computer technology at the time of the invention.[6]

Defendants analogize the claimed invention to the business practice of identifying customers, which has long been performed through "mental steps and paper records" without the

---

[5]The parties also dispute whether the patents present a risk of preemption of any technological field. (*See* D.I. 20 at 15; D.I. 21 at 7-8) Given the Court's decision to deny the motion, it is not necessary to undertake any separate analysis of preemption.

[6]The parties cite to evidence outside the complaint, including online and newspaper articles. (*See* D.I. 16 at 11 n.6; D.I. 20 at 4) The Court cannot consider such evidence at this stage. *See In re Burlington*, 114 F.3d at 1426 ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings"); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

aid of computers. (D.I. 11 at 6) Defendants provide the following illustration:

> [I]n the past, retail store employees engaged in this exchange manually with customers who had accounts with the store. On the customer's first visit, he or she would present some form of identification (e.g., name and address) to open a store account. In exchange, the store would give the customer an account number (the second set of information). The customer would keep the account number and the store would record the account number in conjunction with the customer identification information (the third set of information) in its record system. On his or her next visit, the customer would present the account number, which the store employee would compare to the information previously recorded by the store. If the information matched, the customer would be identified as associated with the account and proceed to use the account service.

(*Id.*) At this stage, the Court is not persuaded of the appropriateness of this analogy. The specification explains that "a ***significant problem*** addressed by the invention is the ***problem of economically distributing updates of electronic information*** products to a wide customer base that may number tens or hundreds of thousands, and in some cases, ***millions of consumers***." '077 patent, 4:45-49 (emphasis added). The current record, taking Plaintiff's well-pled allegations as true, does not establish that a simple, manual method of dealing with one customer at a time, with just the assistance of general computer technology, could solve this problem.

The Court is also unpersuaded by Defendants' contention that TMI has improperly "conflate[d] the § 101 analysis with novelty under § 102." (D.I. 21 at 7) The complaint adequately and plausibly alleges that the claims capture a non-routine, unconventional, and not well-understood activity, and may improve the functioning of computers. Hence, the motions to dismiss will be denied.

### B. Direct Patent Infringement

Defendants argue that "TMI's Complaint mistakenly adopts the abrogated Form 18 pleading style, and thus fails to provide any factual allegations sufficient to state a plausible claim of patent infringement under *Twombly* and *Iqbal*." (D.I. 16 at 18) According to Defendants, "[t]he Complaint does little more than allege ownership of two patents and claim . . . that Defendant infringes these patents by 'practicing and/or using' unidentified 'hardware' that practices the patented computer methods 'via Defendant's use of cookies in conjunction with its website.'" (*Id.*) (citing D.I. 1 at ¶¶ 11, 19) Defendants further argue that the two claim charts attached to the Complaints are "incapable of curing the deficiencies in the Complaints." (*Id.*)

Plaintiff responds that the allegations in the Complaints and the attached claim charts provide more than fair notice of its direct infringement claim. (D.I. 20 at 19-20) In Plaintiff's view, "it is not required to identify every exact piece of information a Defendant has received, sent, stored, retrieved, and/or used in order to state a cause of action for infringement." (*Id.* at 20) Further, "Defendants should not be permitted to shield themselves from a complaint for infringement simply because . . . there is no more specific information available other than that already identified by TMI." (*Id.*)

To adequately plead direct infringement, a plaintiff needs to plead facts that plausibly indicate that the accused products contain each of the limitations found in the claim. *See Microchip Tech., Inc. v. Delphi Auto. Sys.*, LLC, 2018 WL 605893, at *2 (D. Del. Jan. 29, 2018); *e.Digital Corp. v. iBaby Labs, Inc.*, 2016 WL 4427209, at *3-4 (N.D. Cal. Aug. 22, 2016); *Raindance Techs., Inc. v. 10x Genomics, Inc.*, 2016 WL 927143, at *2-3 (D. Del. Mar. 4, 2016). Here, the Complaints allege that Defendants infringe at least claim 6 of the '077 patent and at

16

least claims 1 and 2 of the '078 patent "by, among other things, practicing and/or using hardware that practices the computer implemented method . . . via Defendant's use of cookies in conjunction with its website." (D.I. 1 at ¶¶ 11, 19) Claim charts attached to the Complaints show how "cookies in computers" generally work and compare each of the claim limitations to Defendants' use of cookies in their respective websites. (*See id.* Ex. 4 at 1-19) In this case, what Plaintiff has provided (*see, e.g.*, *id.* Ex. 4 at 2) is sufficient to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 554-55.

Essentially, the claim charts map the steps of the asserted claims to Defendants' alleged use of cookies on their websites in the context of a user initially visiting a website, e.g., to search for or purchase an item listed for sale online, and returning to that website at a later time. According to the chart, cookies allow a website to identify a user and, upon that user returning to that website after her first visit, populate the website with information specific to that user, such as items the user previously looked at, and previous orders. It is undisputed that each of the Defendants' websites uses cookies. The Complaints combined with the claim charts provide sufficient "notice of what activity is being accused of infringement" and "exceeds the minimum requirements under Rule 12(b)(6), especially as the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (internal quotation marks omitted).

In the Court's view, Plaintiff has pled "facts sufficient to allow a reasonable inference" of direct infringement. *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016). The motions to dismiss will be denied.

17

## V. CONCLUSION

For the reasons stated above, Defendants' motions to dismiss will be denied. An appropriate order follows.